with Mr. Levine and Ms. Greenwald. This is appeal number 21-1277 and we'll pause and make sure everybody's on board. All right. We have, whoops, I think we have everyone. Great. Mr. Levine, you're up first. Go ahead. Thank you. Thank you. Good morning. May it please the court. My name is Jeff Levine. I represent Jeffrey Johnson. I believe my brief covers all the issues. I present three issues. One was that the motion to suppress that I filed after coming into the case late after the trial. The district court should have heard that the court is obligated to safeguard the rights of accused and provide for a fair trial. The issue was never decided on the merits. That the district court sentenced Mr. Johnson for an analog of fentanyl when it was a schedule one controlled substance. And that the mandatory minimum that Illinois criminalized a broader category with regard to the drug laws. I have, I have, I was yesterday, I was at the clerk's office. I was regarding the supplement of the record. I am still working on the supplement of the record. I apologize that I have not got those videos into the courts. The record on appeal. I'm still working on it. I spent hours yesterday. I was at the clerk's office for both the district court and the appellate court trying to get them to accept that this themselves. And they refused to do that. But I'm still working on that. Search. Yes. These are the videos of the specific search. Mr. Levine, so we understand the sequence. The videos are produced as part of discovery. A portion of the videos are utilized at trial. A request is made to supplement the record with those videos. The district court rules in your favor. Government submits exhibits 205 and 206. You then have permission to submit the remainder. And those currently are still outside the record, subject to what you just said. That is correct. And I have, I spent, I spent hours trying to upload them last night. And I was at both the clerk's office yesterday, trying to get them to accept that this, but I'm still working on that. And I, I will accomplish it. I apologize that they're not on the record at this point. I was willing to waive argument in this case, and I'm going to give the government an opportunity to speak since they did not want to waive the argument. Can I ask you, Mr. Levine? I'm on. Let's. I guess on your first issue on the. On the search and the motion to suppress. I guess I'm trying to understand why you think it was an abuse of discretion. To deny a hearing to a post trial motion to suppress. I've never seen one before. Your honor, I believe it was, I, the motion was made for good cause. I believe the. Issues completely missed by the initial council that there was a. It's it seems obvious that there was a, this was a utilized as a general warrant. To go in and search for anything illegal. And we would, you're asking us basically to declare the prior council was ineffective. Which, frankly, I would hesitate to do without a hearing. In which that lawyer had an opportunity to be heard. Which a 2255 motion could provide. I presented my motion prior to the institution of judgment. I raised the issue I presented all the specifics to the district court. And the specifics are pretty. Pretty blatant, the officers search car titles. They search for drugs, and then 1 of the 1 of the officers testified. And then the 1 of the officers testified. Officer Gorski said, we search for anything illegal. And that's in the transcript. We search for anything illegal. Okay. On the, on the question of the. Statutory. Fentanyl analog versus controlled substance analog. I'm sorry. I guess, as I understand it. Defense agreed to the jury instruction that was given on that issue. Is that right? I believe that's correct. So, ordinarily, we would treat that as waiver. That would not even be subject to plain error review. What would be your best argument for plain error review? And I also need to ask on the related, but if we got to plain error. The 2nd circuit. In the case of United States versus McRae. Recently rejected exactly the argument you're making on the merits. Which would seem to me, make it difficult to treat this as plain error. Even if we were to disagree with them. On the merits. Your honor, the. There's no question that the. Analog was a schedule 1 controlled substance. And the statutes require that the statutes indicate there's no guideline. And I think we have to follow the statutes. Saying that there's no guideline, which requires a 5 year. A sentence in this case. The government's argument against that. It was the intent of Congress. What it believed to be the intent of Congress. Made it a more. More serious sentence. And I think we have to fall back on the rule of lenity. I think the statutes requires if the. Legislature wants to wants to specifically make changes. But I think we have to follow what the legislature says in this instance. And the legislator has the legislature has. Has made it a schedule 1 controlled substance. And I don't think. An interpretation can change that. Okay, thank you. And did you want to address the Ruth case? With respect to your guideline issue. Not that I'm going to rely on the brief for that. Okay, thank you. All right. Ms. Greenwald. We turn to you for the government's position. Good morning, your honors. May it please the court. This court's dealing first with the suppression issue. This court's precedents, particularly Daniel McMillan. Make absolutely clear that absent a showing of good cause. This court cannot consider on appeal. An issue raised in a tardy motion to suppress. There's no dispute here that this. Post. Post trial motion was extremely tardy. The district court was well within its discretion in finding. No good cause shown. To excuse the tardiness. Defense counsel did not develop the record to show ineffective assistance. And as this court has made clear in Kate's a cocks. And a line of precedents without the record developed. Particularly as to why counsel didn't raise the issue when the record so silent. There's nothing in the record to rebut the presumption that is there under Strickland. That the attorney's conduct fell within a wide range of personal assistance. Ms. Greenwald can ineffective assistance of counsel ever. Be a basis for good cause. Your honor. That is a question that I spent a lot of time researching for good cause under rule 12. And I think there are. I think that. It's really not been determined. I found a couple of cases where they did consider it. In that context, although they did not find it. Defined it to be good cause. But they didn't really reach the issue. That was raised by judge wood here. As to whether it can be raised. I think the good cause language. Certainly could encompass that. Traditionally, this court has not viewed that or there's not been instances. It's very unusual. I would say your honor for it to come up in this context. Because usually it's the same attorney. Who's representing. The defendant. You know, at sentencing. And so when you raise it for the first time, if you get a new appellate lawyer. And you raise it for the first time on appeal, which is what happened in ACOX. And other cases. There isn't the record to raise good cause. And so this court has counseled like an ACOX. Don't do it here. Do it in a 2255. So there just isn't a lot of law on it. And in this case, you don't need to reach that issue and decide it definitively. Because the fact remains that. Good that ineffective assistance was just simply not shown on this record. And even if he could have asked for a hearing and tried to develop it. That's not what happened here. As judge would found. So this court cannot even reach the merits of it. And I really believe our, our brief fully addresses. The merits, particularly the fact that. Even if the officers had the intent alleged here. The law is absolutely clear under Wren and Vandriel decided by this court. That as long as the officer seizure of contraband or evidence at issue is objectively reasonable under the fourth amendment, there's subjective intentions do not matter. And the only thing I would add is a factual matter. Is I do take extreme issue with. Alluding to off with the officer who selects, I believe it is testimony suggesting that they searched for anything. What happened. And we explained this in our brief. Is that the court at the request of the defense council. Prevented the government from in any way, referencing that they were at this house pursuant to a search warrant. So when the officer who collected, He was the inventory officer who collected the things that were found at the site. When he had to explain what an inventory officer did. He could not reference a search warrant. He could not in his explanation because he'd been barred from it at the request of defense council say. I collected everything pursuant to a search warrant. He had to explain. And he did explain it. I think appropriately given the circumstances. We collected. I collected what contraband and other items were found. So I think that testimony really, that, that, that argument as to that testimony takes it completely out of context. Unless the court has any more questions. Yes. A couple of questions. Is it. I gather that in this, the search of, of this residence. Wall board was torn out. Yes, your honor. Is that routine? No, I wouldn't say it is your honor.   And the reason for that is because. The floor. And let me actually be. Body cam recorders that mr. Levine is trying to supplement with really explain. What happened here. What happened here is when they were searching the porch area, which there's no dispute was curtilage. They were proper to search. There was a step ladder. Right underneath. That portion of the, of the ceiling. And so when they were searching and they saw the step ladder there. It was logical for them to think, aha, step ladder. There may be something up there. And that is what led them to do that. Your honor. And, and they expressly say, as you'll see in this video, there's a step ladder here. Why is it here? He must be putting something up there. And that's why they came to look up there and saw the rafter and saw the, how something could be in the rafter. And that's why they did it in this case, your honor. And then upon doing it. Which. Could be a place where guns and weapons and ammunition and records could be hidden by they were, they were authorized to search for those things because he was a felon in possession. And so they found a position where someone who's not allowed to have firearms might conceal those things. That's why they looked in there and then found the sock. So we're good. The government's position. In essence, any, any place small enough to hide a one round of ammunition was within the scope of the search. Yes, your honor. Okay. And it wasn't, I would just add, it wasn't only ammunition. It was also records of transactions and items that can be used to maintain or paraphernalia for firearms, which can include brushes, oils, things to contain, to protect the weapon and clean it. If your honors don't have any more questions. I do. Oh yes, your honor. I just want your best effort at this. If Mr. Levine had asked for an evidentiary, his hearing on the issue of whether the prior council was effect effective or ineffective with the government have objected. I don't think so at the time, your honor. The reason for that is that I don't think the law is absolutely clear as to whether this can be raised in the context of a rule 12 proceeding. So I believe that the best way to protect the record would have been to have that hearing. And then, you know, maybe also have raised it as a legal matter. If you've come, you know, again, we didn't have to reach this decision and analyze it fully in this case, but maybe alternative argument that whether it could or couldn't have been raised, but to protect the record and get it on appeal to get the issue settled. If we'd taken a contrary position, it would have made sense to develop the record. So I, I, I don't believe so. But I don't think there was anything in the record as it stood, nor do I believe because on the merits, I believe he would lose. As we argue in our brief, I don't think prejudice could have ever been shown, which would also explain why this wasn't raised as an issue, because it has no merit under Supreme court law and this circuit's law. So I don't think there would have been any merit to it. And perhaps actually your honor, perhaps we would have argued that the in fairness to the government council there, perhaps we would have argued the prejudice point and set a hearing wasn't necessary because he couldn't have shown prejudice. But if we had done so, it would have been on that basis and not on the basis that it couldn't be raised in a rule 12, which is an unsettled issue. Unless the court has any other questions on the suppression issue, I'd like to turn to the fentanyl issue. And what I would say is that the government's entire argument here in contrast to what Mr. Levine is saying is that we are following what the legislature says because and that the district court, even if the, I mean, the government's position is this was waived by agreement to the instruction on the definition of the analog, but in any event, the court did not air much less plainly air by sentencing defendant to an enhanced penalty under eight 41 B one, a six based on the jury's finding that he possessed with intent to distribute at least 100 grams of an analog of fentanyl. The jury was properly instructed consistent with the second circuit's opinion in McRae that an analog of fentanyl is a chemical compound whose chemical structure is substantially similar to that of fentanyl. And the jury found that that substance possessed by the defendant satisfied that definition based on extensive testimony by a DEA chemist. And the defendant neither here nor in the district court ever contested that fact. In other words, the fact that fernal fentanyl has a chemical structure virtually identical, substantially similar to that of fentanyl. Defendants argument rests on the faulty premise. And this is where I get to what the legislature said here and that the government's following what the legislature said. The defendant's argument rests on the faulty premise that any analog as used in eight 41 B one, a six must be defined the same as the term of art controlled substance analog as used in the separate analog act codified separately at section eight 13 and his argument ignores the plain language of the statute, that Congress did not use the phrase controlled substance analog in this enhanced penalty penalty provision and used a different phrase, any analog of fentanyl and that choice of sentence, that choice of a different phrase for the enhanced penalty provision of eight 41 B one a six is particularly significant because Congress wrote and enacted the sentencing enhancement provision and the analog act in the very same piece of legislation, the anti-drug abuse act of 1986. And as the Supreme court instructed in Rosello where Congress includes particular language in one section of a statute, but omits it in another section of the same act, it's presumed Congress acted intentionally and purposefully in the disparate inclusion or exclusion. And, and here it's even more demonstrated because in other subsections of this penalty provision in B seven, a, for example, just a few paragraphs down from the provision we're talking about B one, a six the court uses the term and a controlled substance analog. And yet in the very provision we're talking about, they use the word any analog and fentanyl and Congress's decision to use the analog in that sentencing provision was intentional and should be given meaning. And because it's undefined, therefore, in the enhanced sentencing provision, it should be given its common meaning. That's what canons of instruction of rules of canons of construction provide for undefined terms. And in the chemistry context, as the second circuit determined in, in McCrae in the chemistry context, a dictionary defines it as an analog as a chemical compound that has a structure substantially similar to the chemical compound structure of another compound. And that's precisely the definition of the analog provided to the jury here without defense objection and an expert test of testimony established. And the defendant does not contest that fernal fentanyl meets that definition. So the, the district court here did not plainly err. It did not err at all in sentencing the defendant to the 10 year mandatory minimum based on the jury's finding, which in turn was based on a proper instruction and overwhelming evidence that was uncontested at trial. As to the, as to the Ruth issue, as we point out in the brief, defendant has not challenged the soundness of this court. Well, actually before I moved to Ruth, let me make sure, does the court have any questions for me on the fentanyl issue? On the Ruth issue, as we point out in our brief, defendant does not challenge Ruth or the soundness of Ruth. And this court since Ruth has repeatedly affirmed it and Ruth, the Ruth argument basically was the only basis he challenged his career offender enhancement. And again, he was not sentenced to the 15 year mandatory minimum on that issue he won. He was only sentenced on the 10 year mandatory minimum for the fernal fentanyl and he was found to be a career offender. But again, that was governed by Ruth, which he does not challenge in his brief and has not provided an argument here as to why Ruth shouldn't be followed. And this court has repeatedly affirmed Ruth. So unless the court has any questions, the government would respectfully request that you affirm the defendant's conviction and sentence. Thank you, Ms. Greenwald. Mr. Levine, you have a rebuttal time available. And you're still muted. Thank you. Okay. Um, with regard to the issue of whether or not, uh, trial counsel utilize the strategy, uh, my position is that he would have to be aware of the issue in order to, uh, um, use it as a strategy. And the record appears to show that he had no awareness of the issue at all. Um, with regard to the, the search, the videos will demonstrate that once the officers stopped looking for firearms and started looking for drugs, and this included using their knife to cut open things and look into bottles, uh, soap bottles. It was at this point, they started tearing down the drywall, uh, in the back porch. So at this point, they had abandoned any search for guns and we're now looking for drugs, uh, outside the scope of the warrant. And, and, um, um, I would request that the court, uh, uh, return this matter, the district court, uh, for hearings with regard to the search and, uh, uh, reverse with regard to the, uh, fund militia. Yeah. The court has any questions. I believe so. Thank you to both counsel. The case will be taken under advisement.